**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SULLIVAN OLSON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 2017 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 727, | ) ) ) | |
| Defendant. | ) ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 727, | ) ) ) | |
| Counterplaintiff, | ) ) | |
| v. | ) ) | |
| SULLIVAN OLSON, INC. and CREMATION SOCIETY OF ILLINOIS, INC., | ) ) ) ) | |
| Counterdefendant and Third-Party Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions: (1) plaintiff and third-party defendant's motion for summary judgment on the complaint and counterclaim; and (2) defendant's motion for summary judgment on the complaint and counterclaim. For the reasons explained below, plaintiff and third-party defendant's motion is denied and defendant's motion is granted.

**BACKGROUND**

Plaintiff, Sullivan Olson, Inc. ("Sullivan Olson") brings this action against International Brotherhood of Teamsters, Local No. 727 (the "Union") pursuant to Section 301(a) of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiff seeks a declaration that it lawfully repudiated and is not bound by the compliance agreement and collective bargaining agreement that the Union contends are enforceable against plaintiff. (ECF No. 1, Compl.) The Union has filed a two-count counterclaim pursuant to the LMRA and Federal Arbitration Act, 9 U.S.C. §§ 4 and 6, for confirmation of an arbitration award on one grievance and to compel arbitration of another grievance pursuant to the collective bargaining agreement. The counterclaim is also asserted as a third-party complaint against the Cremation Society of Illinois, Inc. ("Cremation Society"), an entity into which Sullivan Olson merged a few weeks after the filing of this action. (ECF No. 5, Countercl. & Third-Party Compl. ¶ 7; ECF No. 14, Answer to Countercl. & Third-Party Compl. ¶ 7.) The Court will refer to Sullivan Olson and Cremation Society collectively as "plaintiffs" where appropriate.

## DISCUSSION

### A. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). When the nonmovant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the nonmovant's claim or defense. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski*, 712 F.3d at 1168 (quoting *Celotex*, 477 U.S. at 322).

**B.     Background Facts**

The following relevant facts are undisputed. Cremation Society is an Illinois corporation that does business in the funeral services industry in Chicago under the name Olson Burke/Sullivan Funeral & Cremation Center ("OBS"), which is located at 6467 North Northwest Highway, as well as at nine other locations in northern Illinois. Gerald Sullivan is the president of Cremation Society; he and his wife are its sole shareholders. Sullivan Olson was an Illinois corporation that operated OBS until Sullivan Olson was purchased by Cremation Society on December 31, 2013, merged into Cremation Society in April 2014, and ceased to exist thereafter. Gerald Sullivan was the president and sole shareholder of Sullivan Olson. Further detailed facts regarding the relationship between Sullivan Olson and Cremation Society are set forth below at section C.2.

The Union is a labor organization that is affiliated with the International Brotherhood of Teamsters. Sullivan Olson's relationship with the Union stemmed from the settlement of a lawsuit brought by the Trustee of the Union's benefit funds.[1] On October 7, 2003, Sullivan Olson executed a Compliance Agreement with the Union, which provides:

---

[1] The Trustee had brought suit in June 2000 alleging that Cremation Society and another affiliated entity owned by Gerald Sullivan, Forest Crematory, Inc., which were both signatories to the relevant collective bargaining agreement, owed unpaid contributions to the funds, and that Sullivan Olson, which was not a union shop at the time, was a single employer with, joint employer with, or alter ego of the other defendants.

3

> This AGREEMENT is made by and between Sullivan Olson, Inc. d/b/a Olson Burke/Sullivan Funeral & Cremation Center, an Illinois corporation, hereinafter called "Employer", and Local Union No. 727, I. B. of T., hereinafter called "Union".
>
> 1. The Employer agrees to adopt, abide by and be bound by (a) all the terms and provisions of the Collective Bargaining Agreements (hereinafter collectively referred to as the "Principal Agreement"[)][2] entered into by and between the Union and the Funeral Directors Services Association (hereinafter called the "Association"), and (b) all matters relating to wages, hours, benefits, terms and conditions of employment set forth in the Principal Agreement with the same force and effect as though the Employer were a signatory to the Principal Agreement and as though the Principal Agreement were fully set forth herein. The Employer also agrees to adopt, abide by and be bound by all extensions, renewals, modifications and amendments of the Principal Agreement and all Agreements subsequent to the Principal Agreement between the association [sic] and the Union. The Union agrees to accept the Employer as a party to the Principal Agreement as if the Employer were a signatory thereto.
> 2. This Compliance Agreement shall remain in full force and effect until June 30, 2007, and from year to year thereafter, provided, however, that this Compliance Agreement may be terminated by either party upon written notice to the other at least sixty (60) days prior to June 30th of 2007 or of any subsequent year.

(ECF No. 38-1, Union's Exs. Supp. Mot. Summ. J., Ex. 3, Compliance Agreement.)[3] Accordingly, the parties agree that at least until November 30, 2013, Sullivan Olson was bound to the terms and conditions of the Union's collective bargaining agreement (the "CBA") with the Funeral Directors Services Association ("FDSA"). The relationship between Cremation Society and the Union, on the other hand, terminated in 2007.

The CBA, which is in effect from July 1, 2012 through June 30, 2017, recognizes the Union as the exclusive collective bargaining agent for all employees performing "bargaining unit work," which the CBA states is "the performance of embalming, whether in training or licensed,

---

[2]This "hereinafter" phrase is missing a corresponding closing parenthesis; the Court assumes that it belongs here.

[3]Neither Sullivan Olson nor Cremation Society were members of the Funeral Directors Services Association, a multi-employer association, at any relevant time.

funeral directing, whether in training or licensed, and auto livery chauffeur services," and "explicitly includes removals, transportation of remains, embalming, funeral directing and all other work historically done by the bargaining unit." (Union's Exs. Supp. Mot. Summ. J., Ex. 4, CBA, arts. 1.1, 1.4.)

In January 2013, Sullivan Olson laid off an employee named Henio del Castillo, who had been a chauffeur, and del Castillo was rehired by Cremation Society as a general assistant, with different duties at a different location. After this event, Sullivan Olson had a single employee on its payroll, funeral director Douglas Klein, who was a member of the bargaining unit represented by the Union. On November 30, 2013, Sullivan Olson sent the Union a letter purporting to repudiate the CBA and stating that Sullivan Olson had determined that it had no need to hire any additional bargaining-unit employees at any time in the future. On December 16, 2013, Vicki Grantham, Cremation Society's comptroller, sent Klein an e-mail stating in part that as of December 30, 2013, Klein would be employed by Cremation Society, not "Olson's," and because "OBS is no longer in the Union," a variety of Klein's employment terms and benefits would change. (ECF No. 33-5, Pls.' LR 56.1 Stmt., Ex. A-11.)

On December 19, 2013, a Union representative called Sullivan Olson to inquire about dues. Sullivan Olson responded through its counsel on December 29, 2013 by sending a letter to the Union that referred to the November 30 repudiation letter. The Union then replied by letter on January 6, 2014, denying that the Compliance Agreement and CBA were no longer in effect.

Article 19 of the CBA sets out a grievance and arbitration procedure for "[a]ny complaint, grievance or dispute arising under or concerning the meaning, application, or compliance with the terms of this Agreement between the Employer and the Union and/or an employee." (*Id.* art. 19.) The CBA provides that when the Employer and the Union themselves

5

cannot resolve the dispute in two required meetings, the grievance may be referred to a Grievance Board (the "Board") that is made up of three individuals selected by the FDSA and three individuals selected by the Union. (Union's Exs. Supp. Mot. Summ. J., Ex. 4, CBA, arts. 19.1, 19.2.) The CBA requires the Board to hold a hearing (evidentiary, if desired by a party) and render a decision on the referred grievance. (*Id.* art. 19.2.) A majority decision of the Board is final and binding on all parties. (*Id.*) If the Board fails to hold a hearing or issues a split decision, the Union or the Employer may submit the matter to arbitration. (*Id.*) The decision of the arbitrator is final and binding upon the parties. (*Id.* art. 19.3.)

On February 13, 2014, the Union filed a grievance, number 3930 ("Grievance 3930"), complaining that Sullivan Olson had attempted to repudiate the Compliance Agreement and CBA and had failed to respond to the Union's request for documentation related to the employment of individuals performing bargaining-unit work. (Union's Exs. Supp. Mot. Summ. J., Ex. 9.)

On March 10, 2014, Gerald Sullivan gave Douglas Klein a memorandum titled "Long term termination," which discussed a February 2014 incident where Klein was parked outside a hospital and had allegedly left his van doors "wide open" while the van contained the remains of a deceased person and Klein was away from the van retrieving the remains of another deceased person. (Union's Exs. Supp. Mot. Summ. J., Ex. 8, at 3.) The memorandum stated that as a result of the incident and "ongoing difficulties" with Klein's performance, Cremation Society had "determined it has no choice but to terminate [Klein's] employment, effective August 31, 2014." (*Id.*) On March 14, 2014, the Union filed another grievance, number 3621 ("Grievance 3621"), which alleged a violation of the discipline and discharge provisions of the CBA, stated that a similar incident in May 2013 had resulted in only a verbal warning, and sought Klein's

reinstatement. (*Id.* at 1-2.) On March 21, 2014, Sullivan Olson filed the instant action in this Court.

Sullivan Olson and the Union could not resolve Grievance 3930, and Sullivan Olson refused to process Grievance 3621, so the grievances were referred to the Board. The Board scheduled a hearing for May 1, 2014 and provided Sullivan Olson with notice, but Sullivan Olson did not attend. (Union's Exs. Supp. Mot. Summ. J., Ex. 6, at 1.) The Board issued a decision on May 2, 2014 sustaining Grievance 3930 and finding that "Olsen Burke-Sullivan Funeral Home [sic] is still bound by the FDSA Compliance Agreement until June 30, 2017 and from year to year thereafter, absent timely notice to the Union." (*Id.* at 1-2.) The Board also ordered "Olsen Burke-Sullivan Funeral Home [sic] . . . to meet with the Union to process Grievance # 3621 regarding the termination of Douglas Klein according to the procedures outlined by the current FDSA Collective Bargaining Agreement within 30 days of this decision." (*Id.* at 2.) It is undisputed that subsequent to the Board's ruling, Sullivan Olson and Cremation Society have continued to refuse to recognize the Union as the collective-bargaining representative of any employees and have failed to process Grievance 3621.

## C. The Parties' Cross-Motions

The LMRA "provides for federal subject-matter jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization' (such as collective bargaining agreements), 'without respect to the amount in controversy or without regard to the citizenship of the parties.'" *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (ellipsis omitted) (quoting 29 U.S.C. § 185(a)). This is a suit "for violation of contracts" within the meaning of this provision because Sullivan Olson is alleged to have violated the terms of the CBA by attempting to terminate the

collective bargaining relationship without providing proper notice, and Sullivan Olson (now Cremation Society) is seeking declaratory relief with respect to its alleged violations of the CBA. *See J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 973 (7th Cir. 2005).

The basis for the declaratory-judgment claim is the National Labor Relations Board's ("NLRB") "one-man unit rule," which provides that "'if an employer employs one or fewer unit employees on a permanent basis[,] the employer, without violating Section 8(a)(5) of the [National Labor Relations] Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.'" *See id.* at 973 (quoting *Stack Elec., Inc.*, 290 N.L.R.B. 575, 577 (1988)). The rule is based on the principle that "'collective bargaining presupposes that there is more than one eligible person who desires to bargain.'" *Id.* at 973-74 (quoting *Foreign Car Ctr., Inc.*, 129 N.L.R.B. 319, 320 (1960)). According to plaintiffs, because the one-man unit rule can be applied at any point in the pendency of a collective-bargaining relationship, Sullivan Olson lawfully repudiated the CBA by terminating the Compliance Agreement in November 2013, when the number of employees in the covered unit had fallen to one. (ECF No. 33-2, Pls.' Mem. Supp. Mot. Summ. J. at 3-4.)

As an affirmative defense, the Union alleges that Sullivan Olson and Cremation Society constituted a "single employer" before they merged and therefore, all Cremation Society employees who worked at OBS were covered under the CBA that bound Sullivan Olson. In the Union's view, because the bargaining unit was never down to one employee when Cremation Society employees are considered, Sullivan Olson's repudiation of the CBA was unlawful (as well as untimely under the provisions of the Compliance Agreement), and Cremation Society

remains bound by the CBA and its grievance requirements. (ECF No. 39, Def.'s Mem. Supp. Mot. Summ. J. at 8.)

Because the parties' submissions address the same issues, the Court will analyze the cross-motions in a single discussion. The cross-motions address the following issues: whether the Union waived, or is equitably estopped from asserting, its single-employer theory; whether Sullivan Olson and Cremation Society constituted a single employer; even if they did constitute a single employer, whether Klein was still the only bargaining-unit employee at the time of repudiation; and whether the Court should enforce the decisions of the Grievance Board.

1. **Waiver and Estoppel**

Plaintiffs assert that because the Union has "operated as if" Sullivan Olson and Cremation Society "were two separate entities" for a decade or more, the Union impliedly waived, or is equitably estopped from asserting, the single-employer theory. (Pls.' Mem. Supp. Mot. Summ. J. at 5-10.) In support of their arguments, plaintiffs cite only Illinois law (aside from one inapposite NLRB advice memorandum).[4] The substantive law to be applied here, however, is federal common law, not state law. *See Crider v. Spectrulite Consortium, Inc.*, 130

---

[4]In support of their contention that the Union waived the single-employer argument, plaintiffs cite *Dean E. Norris, Inc.*, 40 N.L.R.B. AMR 18, 2012 WL 4471546 n.11 (2012), which states in relevant part as an aside: "Also, as noted by the Region, where ostensibly separate companies are found to be a single employer, an 8(f) [bargaining agreement] signed by one of the companies is applicable to employees of related companies if a single bargaining unit is appropriate, provided that a[n unfair labor practice] charge is filed within six months of the Union's clear and unequivocal notice of the double-breasted operation. . . . Here, the Union had clear and unequivocal knowledge of the Employer's double-breasted operation for 35 years and acquiesced to it rather than filing a timely charge." *Norris* is distinguishable. The issue there was not whether the subject entities were a single employer; that was the premise, and the memorandum addressed whether the employer had violated the National Labor Relations Act by refusing to apply an existing bargaining agreement to a group of employees who had historically been excluded from the bargaining unit. *Norris* does not rely on any analysis of waiver. Moreover, the record here does not show any "clear and unequivocal" knowledge on the part of the Union, as discussed below.

F.3d 1238, 1242 (7th Cir. 1997) ("The substantive law in a section 301 suit for breach of the collective bargaining agreement is federal common law rather than state law.") (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957)). Plaintiffs have not cited any pertinent federal authority that supports their implied waiver and equitable estoppel arguments or indicates that this is an area in which federal common law borrows state law.

Even assuming that the doctrines could be considered here, plaintiffs have not submitted evidence that would support their application. Waiver is the "voluntary and intentional relinquishment of a known right." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009) (applying Illinois law). "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it," but "the act relied on to constitute the waiver must be clear, unequivocal and decisive." *Id.* A party claiming equitable estoppel must demonstrate, among other things, that the other party misrepresented or concealed material facts of which the party claiming estoppel was unaware and reasonably relied upon to its detriment. *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000).

The evidence plaintiffs submit, which consists of the Union's interactions with various entities owned by Gerald Sullivan from 2003 to 2013, does not merit extended discussion; it suffices to say that the evidence does not suggest that the Union acted in any way that clearly, unequivocally, and decisively showed an intent to relinquish a single-employer claim or that the Union misrepresented or concealed a material fact of which plaintiffs were unaware and relied upon to their detriment. Plaintiffs rely heavily on the fact that in 2004, the Union filed a charge

10

with the NLRB alleging that Cremation Society, Sullivan Olson, and Forest Crematory, Inc. were a "single integrated enterprise" that had failed to execute a compliance agreement with the Union, and the Union then withdrew the charge three months later. (ECF No. 40-4, Pls.' LR 56.1 Stmt. Add'l Facts, Exs. 3-E & 3-F.) That the Union believed it had grounds to assert a single-employer claim against the entities in 2004 yet withdrew and did not reassert it until after Sullivan Olson purported to repudiate the CBA in 2013 is not evidence of waiver or any misrepresentation by the Union. Plaintiffs also cite the Union's difficulties with Cremation Society and the fact that the Union "ultimately allowed its relationship with Cremation Society to end" in 2007. (Pls.' Mem. Supp. Mot. Summ. J. at 8.) But there is no evidence that the Union told either Sullivan Olson or Cremation Society that it would never again assert a single-employer claim against them, and there is no evidence of any action on the part of the Union that clearly evinced such an intent. Plaintiffs contend that the Union "had every opportunity to observe that the companies were operating as it alleges" and thus either knew or reasonably should have known of the companies' "close ties" yet did not object to these "collaborative" operations. (*Id.* at 8-10.) But plaintiffs do not submit evidence that the Union had clear knowledge of the extent of the integration of the two entities. The Court agrees with the Union that what plaintiffs "are really saying is just that they acted under the assumption that the Union, given its prior silence, would never in the future choose to assert" the single-employer claim. (ECF No. 43, Union's Reply at 7.) That is not enough to create a fact issue as to, let alone establish, waiver or equitable estoppel, even if they applied.

## 2. Single Employer

"'The single employer doctrine holds that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes.'" *Lippert Tile*, 724 F.3d at 946 (quoting *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998)). "'To determine whether two nominally separate business entities are a single employer, one must examine four factors set out by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'" *Id.* (quoting *Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co.,* 995 F.2d 785, 788 (7th Cir. 1993) (citing, *inter alia*, *S. Prairie Constr. Co. v. Local No. 627*, 425 U.S. 800, 803 (1976))). Although centralized control of labor relations is a particularly important factor, *Sheetmetal Workers Union Local No. 110 v. Public Service Co. of Indiana*, 771 F.2d 1071, 1075 (7th Cir. 1985), "[n]o one of the[] factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances," *Lippert Tile*, 724 F.3d at 946-47 (internal quotation marks and citation omitted). "'Ultimately, single employer status is characterized by the absence of an arm's length relationship found among unintegrated companies.'" *Id.* at 947 (ellipsis and internal quotation marks omitted) (quoting *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996)). The fourth factor requires little discussion; it is undisputed that Sullivan Olson and Cremation Society had common ownership. Gerald Sullivan solely owned Sullivan Olson, and he and his wife solely own Cremation Society. The Court will address the remaining factors below and the specific undisputed facts about the pre-merger relationship between the entities that are relevant to each factor.

When analyzing the interrelation of operations, it is the "day-to-day operational matters" that are the most relevant. *Id.* at 947. Cremation Society and Sullivan Olson operated out of the same building, the OBS facility; Cremation Society paid rent to Sullivan Olson for its use of the space. The two entities operated in the same geographic market, and both offered end-of-life services, albeit primarily different products: Sullivan Olson offered traditional burials and Cremation Society offered cremation. Although they had separate price lists and contracts for services, they provided services for each other at OBS, such as removing remains from the place of death and livery driving, and they kept charts of such work titled "Cremation Society Work done by Olson staff" and "Olson Work done by Cremation Society staff."[5] The two entities maintained separate bank accounts and payroll and paid taxes separately under different tax identification numbers. Beginning in 2011, Douglas Klein (who was employed by Sullivan Olson at the time) exclusively transported remains to various Cremation Society locations. Both entities shared the same time clock and computers at OBS. Both entities used the same phone number, although Cremation Society also advertised and used a toll-free phone number. Both

---

[5]The charts document only "removals." (ECF Nos. 33-4 & 33-5, Pls.' LR 56.1 Stmt., Exs. A-8 & A-9.) Plaintiffs cite these lists, portions of Vicki Grantham's deposition testimony, and an action by Cremation Society's directors for the proposition that "[w]hen an employee of either Sullivan Olson or Cremation Society performed work for the other company, the employee's time would appear on a monthly invoice, and the company using the employee would pay the other for the employee's time." (ECF No. 33-3, Pls.' LR 56.1 Stmt. ¶ 35.) None of these items support this assertion. Although Grantham said that the entities would "invoice" each other, she referred to the charts as "invoices." But they look nothing like invoices and contain no amounts due to either entity. (There are columns for "fee charged" and amount "due," but none of the rows in these columns are completed.) Furthermore, Grantham did not testify that the entities actually *paid* each other for these services. (ECF No. 33-4, Pls.' LR 56.1 Stmt., Ex. A, Dep. of Vicki Grantham at 31-32, 62-64.) Similarly, although the directors' action authorized Cremation Society to purchase "management services" from, and provide such services to, Sullivan Olson, (ECF No. 33-5, Pls.' LR 56.1 Stmt., Ex. A-15), it is not evidence that the companies paid each other for any services.

entities used the same employee handbook and training materials, and their employees went through the same training. Both entities used the same administrative assistant, Jan Pica, who answered phones, ran errands, assisted where needed, and posted names on the boards for funerals and memorial services. Vicki Grantham provided accounting, payroll, and information technology services for both entities. She also provided human-resources services for both entities, including the process of hiring, firing, and evaluating employees and updating the employee handbook and training materials. She did not keep track of how many hours she spent doing work for one entity versus the other. Sullivan Olson was not charged for her services and paid no part of her salary. Cremation Society had an executive board (to whom Grantham referred as the "board of directors," even though all of them were not actually directors of the corporation) that consisted of Gerald Sullivan, Donald Fritz, Mary Sullivan, and Katie Sullivan Frideres, and Sullivan Olson did not have a separate executive board or board of directors.

The "common management" factor looks at "'actual or active control, as distinguished from potential control, over the other's day-to-day operations.'" *Lippert Tile*, 724 F.3d at 947 (quoting *Cimato Bros., Inc.*, 352 N.L.R.B. 797, 799 (2008)). Under the "centralized control of labor relations" factor, the Court considers who is responsible for decisions like setting wages, hiring, and firing. *See id.* It is undisputed that Sullivan Olson employees working at OBS reported up the chain to the same manager and ultimately the same executives as the Cremation Society employees working there. Both entities were part of the same organizational chart. (ECF No. 33-5, Pls.' LR 56.1 Stmt., Ex. A-16.) Grantham provided human-resources services for both entities' employees. When employees of both entities called in sick, they would call the same person, Mary Sullivan. Gerald Sullivan was the president of both entities. The Cremation

14

Society's executive board oversaw the affairs of both entities. (Pls.' LR 56.1 Stmt., Ex. A, Dep. of Vicki Grantham at 16.)[6]

Plaintiffs maintain that "the question of integration is, at the very least, still open for factual interpretation." (ECF No. 40-1, Pls.' Reply/Resp. at 15.) The Court disagrees. Although the balancing of the factors involved in the single-employer inquiry is fact specific, the factors here weigh so heavily in favor of finding that the entities were a single employer that no reasonable factfinder could find for plaintiffs on this issue. The Court is mindful that pursuant to *Lippert Tile*, the overarching principle of single-employer status is the absence of an arm's-length relationship. Under each factor of the analysis, Sullivan Olson and Cremation Society were so extensively intertwined that no one could reasonably say they had an arm's-length relationship. The few facts that nominally favor plaintiffs cannot overcome the totality of the circumstances. *See, e.g.*, *Lippert Tile*, 724 F.3d at 946-48 (agreeing with the district court's conclusion on summary judgment that for all practical purposes, the entities at issue were a single employer, and noting that even if one factor favored the entities, it did so "only slightly" and did not "overcome the other factors" that favored the union); *Bd. of Trs. of the Pipe Fitters*

---

[6]Plaintiffs dispute this statement by citing Gerald Sullivan's deposition testimony, which they say "indicates that Donald Fritz was individually responsible for 'running' Sullivan Olson." (ECF No. 40-2, Pls.' LR 56.1 Resp. ¶ 36.) But in the cited portion of Gerald Sullivan's testimony, when he was asked who was overseeing Sullivan Olson during the period just before the merger, Sullivan said: "Don was kind of running that out of his back pocket. Things weren't going well there from a financial point of view and that[,] so *it was various people*." (ECF No. 33-11, Pls.' LR 56.1 Stmt., Ex. C, Dep. of Gerald Sullivan at 15 (emphasis added).) When asked what he meant by "running it out of his back pocket," Sullivan explained: "There wasn't a lot of business there. It really didn't need somebody on a day-to-day basis. If they got something, he'd get, you know, somebody over there to take care of it, do what had to be done." This testimony does not contradict Grantham's and does not create a material fact issue as to common management. It actually supports the Union's position that there was an interrelation of operations and common management.

*Ret. Fund, Local 597 v. Am. Weathermakers, Inc.*, No. 13 C 8562, 2015 WL 8481955, at *8 (N.D. Ill. Dec. 10, 2015) (holding that the entities' different customers, maintenance of separate bank accounts and records, lack of shared employees, and lack of joint hiring, firing, and wage-setting power could not overcome their otherwise vast integration to survive summary judgment on the single-employer issue); *Moriarty v. Svec*, 994 F. Supp. 963, 970 (N.D. Ill.) (finding that a funeral home and livery business constituted a single employer for ERISA purposes where a "high degree of interrelation of operations" existed despite the entities' maintenance of separate records and bank accounts), *vacated on other grounds*, 164 F.3d 323 (7th Cir. 1998).

Accordingly, the Court holds that Sullivan Olson and Cremation Society are a single employer.

### 3. Bargaining Unit

Plaintiffs argue that regardless of whether they constitute a single employer, they are entitled to summary judgment because Douglas Klein was nevertheless the only permanent bargaining-unit employee at the time of the purported repudiation. (Pls.' Mem. Supp. Mot. Summ. J. at 12-15.) In *Lippert Tile*, the Seventh Circuit noted that in addition to a "single employer" finding, "other circuits have held that" a finding that each entity's "workers were in the same bargaining unit" is a prerequisite for applying a CBA to a non-contractual-party entity such as Cremation Society. *See* 724 F.3d at 944 (citing Ninth Circuit, Third Circuit, and Second Circuit decisions and noting that the Seventh Circuit had previously rejected such an argument in the ERISA context). But because the companies involved had waived the bargaining-unit argument, the *Lippert Tile* Court did not decide whether to adopt the reasoning of those other circuits' decisions. *Id.* at 944-46. The Union urges the Court not to engage in the bargaining-

unit analysis because the Seventh Circuit has not previously required it and, in the Union's view, the NLRB "arguably has exclusive jurisdiction to determine an appropriate bargaining unit." (Def.'s Mem. Supp. Mot. Summ. J. at 12-13.) In reply, plaintiffs acknowledge that "the Union is correct that the NLRB maintains primary control over the determination of appropriate bargaining units," but contend that the Union's "claim that the court is incapable of ever analyzing the issue was rejected" in a 1984 district court decision. (Pls.' Reply/Resp. at 16.) Assuming without deciding that the bargaining-unit requirement applies here, plaintiffs have failed to present evidence to rebut the Union's evidence that Klein was not the only permanent employee at OBS who was performing bargaining-unit work at the relevant time.

As stated above, the CBA provides that "bargaining unit work" "explicitly includes removals, transportation of remains, embalming, funeral directing, and all other work historically done by the bargaining unit." (Union's Exs. Supp. Mot. Summ. J., Ex. 4, CBA, art. 1.1.) On the issue of who was performing such work, the Union cites Klein's declaration. Klein states in relevant part that in the fall of 2013, funeral directors Mary Sullivan (who is Klein's wife), Eric Klemundt, and Katherine Howes, who were Cremation Society employees working exclusively at OBS, "regularly performed work at the OBS facility that was covered under the collective-bargaining agreement, including removals and transfers (*i.e.* the transportation of human remains), embalming, preparing bodies for cremation, and conducting funeral services." (Union's Exs. Supp. Mot. Summ. J., Ex. 5, Decl. of Douglas Klein ("Klein Decl.") ¶ 4.)[7] The Court rejects plaintiffs' assertion that Klein's statements are "bare" and "unsupported." (Pls.'

---

[7]This evidence renders unnecessary any discussion of the parties' differing interpretations of "bargaining unit work."

Reply/Resp. at 19.) Klein states that he was employed by Sullivan Olson (and briefly by Cremation Society) for about sixteen years, and his statements are made on personal knowledge. (Klein Decl. ¶ 1.) Plaintiffs fail to submit any evidence to rebut Klein's declaration. As the Union correctly notes, the undisputed fact that Cremation Society employees were under "strict instructions" not to take custody of "'Olson' bodies," (Pls.' LR 56.1 Stmt. ¶ 42; ECF No. 36, Def.'s LR 56.1 Resp. ¶ 42), is neither here nor there; the issue is whether Cremation Society employees were engaged in bargaining-unit work, not whether they did so for Sullivan Olson. The undisputed evidence is that they were.

Because there is no genuine issue that Sullivan Olson and Cremation Society were a single employer prior to their merger and prior to Sullivan Olson's purported repudiation of the Compliance Agreement and CBA, Sullivan Olson's unilateral repudiation was not lawful under the NLRB's "one-man unit" rule, and Cremation Society is not relieved of its contractual obligation to arbitrate under the CBA. The one-man unit rule is the sole basis for Sullivan Olson's declaratory-judgment action. Accordingly, the Court grants the Union's motion for summary judgment and denies the motion of Sullivan Olson and Cremation Society for summary judgment as to Sullivan Olson's complaint.

### 4. The Grievance Board's Awards

The LMRA, 29 U.S.C. § 185(a), provides federal courts jurisdiction to enforce final and binding arbitration awards issued pursuant to a CBA. *See Lippert Tile*, 724 F.3d at 944 (citing *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963)). The Court is confined to ascertaining the question of arbitrability. *Id.* In response to the Union's motion for summary judgment on its counterclaim against Sullivan Olson and claim

against Cremation Society to compel arbitration on Grievance 3621 and confirm the Grievance Board's decision on Grievance 3930, plaintiffs argue that the grievances are "moot" under the CBA. They do not actually make mootness arguments, though. As to Grievance 3930, plaintiffs contend that the Court must refuse to enforce the decision (which found that plaintiffs are still bound by the CBA) because the grievance was filed too late. (Pls.' Reply/Resp. at 20.) Plaintiffs failed to raise this issue before the Grievance Board and therefore waived it. *See Lippert Tile*, 724 F.3d at 944-45 ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award."). Moreover, compliance with procedural requirements for the arbitration process itself is a question of procedural arbitrability that is reserved for the arbitrator. *Beer Sales Drivers et al. Local Union No. 744 v. Metro. Distribs., Inc.*, 763 F.2d 300, 303 (7th Cir. 1985). As for Grievance 3621, regarding Douglas Klein's termination, plaintiffs maintain that it does not fall within the CBA because it is "factually incorrect" as to the date of Klein's termination. (Pls.' Reply/Resp. at 21.) But the question before this Court is simply one of arbitrability, which plaintiffs do not truly challenge. The Court is not to rule on the merits of the underlying claim, *see Lippert Tile*, 724 F.3d at 944 (citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)), which includes determining whether the facts alleged in the grievance are true.

The issues presented to the Grievance Board in Grievances 3930 and 3621 fall within the CBA, and Sullivan Olson and Cremation Society have failed to present a valid reason for vacating or modifying the awards. The awards are therefore confirmed. The Court grants the Union's motion for summary judgment and denies the motion of Sullivan Olson and Cremation

Society for summary judgment as to the Union's counterclaim against Sullivan Olson and third-party complaint against Cremation Society.

## CONCLUSION

Plaintiffs' motion for summary judgment [33-1] is denied. Defendant's motion for summary judgment [38] is granted. Judgment will be entered in favor of the Union and against Sullivan Olson, Inc. on Sullivan Olson's complaint for declaratory judgment and on the Union's counterclaim. Judgment will be entered in favor of the Union and against Cremation Society of Illinois, Inc. on the Union's third-party complaint. Civil case terminated.

**SO ORDERED.**   ENTERED:   March 31, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**